The next case on the docket is number 5 20 0226 McAnally v. Gulley. Arguing for the appellant, John McAnally, is Daryl Dunham. Arguing for the appellee, Donald Gulley, is Thomas Crosby. Each side will have 15 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Mr. Dunham. Are you ready to proceed? I am your honor. Okay, when you're ready. I'm assuming you can see me and you can hear me. Yes, you need to speak up if you can. Okay. Is this okay? Yes, for me. Okay. May please court. I'm Daryl Dunham. I represent the appellant, John McAnally. And this is a defamation case. I think we will probably be spending most of our time or a lot of our time looking at the letter that was sent to my client. I don't think it's going to be denied by SIPC that they sent the letter signed by defendant Donald L. Gulley. It is set forth in the appendix A-8A. And we contend, we believe the reason we brought the lawsuit is that that charges my client, John McAnally with a crime. The reason we think that is is that a criminal statute is cited. The letter states that my client had been trespassing on SIPC property. Repeatedly, he was told that he needed to cease and desist. The the McAnally and I of course, well aware of the so called innocent construction rule. And of course, the courts I think sometimes will look for an innocent construction in order to avoid having people named as a defendant in in libel suits. And so when every case I've ever looked to and the first case that seems to have embraced the rule is the green case, which seems to be the seminal case for libel in the state of Illinois. Every case I've ever looked at when an innocent construction has been found is the innocent construction has been offered. In the trial court and the appellee's motion to the trial court, the trial judge and docket entry granting the motion to dismiss with prejudice did not offer reasons for the ruling. But I have to assume I have to believe the only reason for that ruling is the argument that was embraced was offered by SIPC, which is that the letter is capable of an so wasn't the innocent construction wasn't offered by SIPC in the trial court was not offered by the trial judge in his ruling dismissing the case with prejudice. So we took this appeal, of course, and pointed that out in our brief. For the first time we learned what SIPC claimed that the innocent construction was in the appellee's brief, they point to the criminal statute that cited and say as a condition preceding a bringing criminal charges, the defendant has to have been warned in a criminal case about the trespass before and then not understanding the warning. The defendant has been was trespassed. Nevertheless, that's kind of a novel argument, in the sense that every case that I've been able to look at in the state of Illinois, and I cite a couple in my reply brief, that you do not have to in your libelous statement, make a essentially file a criminal charge or set forth. No case holds that. And of course, we would urge that this court not embrace that ruling. Mr. Dunham, I need to interrupt you one moment. The 2-615 motion filed by SIPC does raise the innocent construction rule. And I think you've just told us that it does not. Did I understand you correctly? I probably misspoke, Your Honor. Yes, that was the only grounds for dismissing the complaint was that there was an innocent construction, the innocent construction rule should apply. My argument is that order is incumbent upon the defendant in a libel case to set forth what is the innocent construction. You can't just say, I don't think you can't say, well, the innocent construction rule should apply, and then not offer the innocent construction. And they didn't do that in the trial court. Nor did the trial judge offered the innocent construction in his ruling. I'm looking at their time. I'm looking, sir, at their motion to dismiss. And it seems that that's all they discuss is the innocent construction rule. Although I do recognize it's a 2-615 motion and not a 2-619 motion. Do you think that makes a case? It was a 615 as opposed to 619? I'm sorry. I sure do, Your Honor, because the first time that I got we had any notice that the case was going to be dismissed with prejudice is when the trial judge dismissed it with prejudice. But my point is, yes, that's all they talk about is the innocent construction rule. I agree. That's all they talk about. But nowhere in their motion to dismiss page 8, A-9 through A-11 of the appendix do they say the innocent construction rule should apply. And here is the innocent construction. This is how somebody reading this letter should construe it and they don't do that. The first time in our brief, I point this out. And I say, what is the innocence? Not that the rule applies. They obviously think it does. They're arguing it does. They just don't tell us what the innocent construction is. Now, in their appellee's brief, they say the innocent construction is that the letter should be construed as a warning. And it needs in order for them to bring criminal charges, they have to give a warning. That's what they say in the appellee's brief. It's the first time that the actual innocent construction of the letter is being offered. And my argument is, is that if you look at the letter itself, 8AA, in the first sentence, it says, on January 26, 2015, in connection with my termination of your employment, I sent a letter informing you that you were not allowed on SIPC property without my express permission. So they had already given the warning. This letter cannot be construed simply as a warning, giving him notice that he's not supposed to trespass in the future. They'd already given that warning. Mr. Dunn, I'm understanding that warning. Yes, Your Honor. You mentioned that they don't say what the innocent construction is, but doesn't paragraph five of their motion to dismiss say the subject letter was a notice not to trespass, not an accusation. So isn't that they're setting forth what their innocent construction is? It's a notice, not an accusation? Well, they, it can't be construed that way, Your Honor. The court have made it very clear that even though there is such a thing as an innocent construction, you cannot reach for something that's not there. It's more than just a warning. They say here that you have, they say here, you are to cease and desist trespassing on all SICP property. In other words, they're claiming that he has done this in the past. He says, without my permission, this is the second sentence of the first paragraph, without my permission, you have repeatedly entered on SIPC property. This is not a warning. They are accusing him of repeatedly entering on SIPC property. They tell him he's supposed to cease and desist from doing that. And then they cite the criminal statute. It's the plain and obvious meaning of the letter is not only has he committed a crime, but they're claiming that he's done it repeatedly. There's no way in our opinion that this letter can be construed as simply a warning, particularly when you read the first sentence, where they've said you had your warning, you had your notice, we told you, don't trespass. And then you've gone ahead and done it anyway. Mr. Dunham, what effect, if any, is there in the fact that this letter was sent to the sheriff? Or posted on Facebook? Which letter was sent to the sheriff? It's my understanding... I think that's all they had done. Go ahead, Your Honor. Well, it was my understanding in reading the briefs and the record that this letter may have been sent to the Williamson County Sheriff's Department. Do you know if it was? We are informed and believe that it was, yes. Okay. Does that... What is the effect of that? On defamation, per se, what, if anything, is the effect of that? Does it matter? I think that when the, when the applicable SAPC says that there is a privilege, it would be communication, had been to the sheriff. We would not have brought this suit, because they do have a conditional privilege, a privilege to report to law enforcement authorities that they have, they suspect somebody is of a crime. But this letter was not written to the sheriff. It may have been copied to the sheriff, or somehow the sheriff may have gotten a copy of it, but this letter was written to John McAnally, and it was copied to me. And so it was clearly communicated to an outside party. And the argument is, well, I'm McAnally's attorney. Well, I wasn't McAnally's attorney on June 27, 2019. I hadn't been retained to represent him in trespass charges. The only justification for writing a letter to me is to inform my client, to inform his, McAnally's former attorney that they think he committed a crime. And so the publication issue is already solved, because they copied me on the thing. And I certainly would invite questions on this, but I, looking at the cases, you have to give the letter its natural meaning. You should not stretch for an innocent construction, and of course, nor should you stretch to find an accusation of a crime. We give the letter its natural meaning. The natural meaning is, number one, we told you not to trespass in the past when we let you go. Number two, you have repeatedly entered in on SIPC property. That's the second sentence. Number three, cease and desist from doing this. Number four, this notice is issued in compliance with the Illinois trespass statute. They cite this statute. There is no crime, Your Honor. Mr. Dunham, in your complaint, in paragraph nine, you say, based upon information sufficient to form a belief, Gulley's decision to publish said false statements was motivated by his dislike for McAnally. So you don't actually allege publication, but you allege information and belief that there was publication. Do you believe that if you were given the opportunity to amend, that you could amend to allege publication? We believe so, Your Honor, and if you look at paragraph six, it is in a conclusionary way, but we do allege publication in paragraph six. But again, that's based upon information and belief. Correct. Okay. Obviously, if we had known that lack of publication was going to be an issue in their original motion, 2615 motion to dismiss, we believe we could have corrected that problem. Okay. Thank you very much, Mr. Dunham. You'll have some time for rebuttal, Mr. Crosby. Are there any questions from the panel? Mr. Crosby, this was a 2-615, not a 619 motion. It seems a little odd that on a first pass that there was a dismissal with prejudice. It does, Your Honor, but the complaint is deficient on its face and this was an unusual circumstance in as much as if you look at the context of the litigation, first of all, Mr. Dunham was the acting attorney for Mr. McAnally. There was an appeal pending before the fifth district on the retaliatory discharge claim at the time that the notice was issued. Prior to the court ruling on the 2615 motion, the court had an evidentiary hearing regarding a counterclaim brought under the Workplace Violence Protection Act because Mr. McAnally had been posting threatening Facebook posts showing automatic weapons that he named after employees at the plant and Judge Blyer heard evidence from not only the employees at the plant but also Mr. McAnally, Mr. McAnally's friends concerning the dissemination of pictures that were and actual threats. Mr. McAnally... How is that relevant to this letter? It's relevant to this letter because it gives a context. Because of the threats going on in the workplace, SIPC sent this letter to keep McAnally off of their property. Eventually, they were awarded a plenary injunction to do that. But prior to that injunction being issued, we wanted to make sure that there was no question of fact that he had been told to stay off of the power company's property given his... Was the letter posted on Facebook? And if so, whose Facebook was it on? McAnally posted it. And if I might talk about publication, which was raised in the motion to dismiss in paragraph six. So it was not on SIPC's Facebook, it was on... McAnally posted it, Judge. The letter was given to a sheriff's deputy, Coburn, who is named in the complaint. Coburn served the letter on McAnally. Also copies went to the sheriff in Johnson County, as well as Williamson County, where the property was located. There was no publication by SIPC. We gave the letter to be personally served by the sheriff's deputy. All of this information came out in the evidentiary hearing, where McAnally admitted that he did receive the letter from Deputy Sheriff Coburn, and was part of Judge Blyer's findings in support of the Workplace Violence Protection Act injunction. But just on its face, Justice Cates, you mentioned that there is publication is veered on information and belief, but even the people who the complaints say got it, the sheriff, the deputy, they are subject to a privilege. And giving them notice, as I think counsel has suggested, is not publication because they were simply taking the letter as part of their official duties, serving it and taking notice of it. So there is no, on the face of the complaint, too, there is no issue that there was no publication by anyone other than McAnally. So we have the innocent construction. If this is not an innocent construction, if you cannot give a written cease and desist, no trespass notice as required by the statute to the sheriff to be served on the putative trespass, then I don't know how you could ever enforce the the trespass. And it was necessary in this case because of the threats of violence, which the court at the time it looked at the at the substance of the of the defamation complaint had already heard evidence concerning the Facebook posts that McAnally had been making for over a year where he was threatening violence. And it just seems to me that the process by which this got passed in this case, which is the defamation rule, would be an affirmative matter that would bar the defamation action. So if that's true, the affirmative matter would actually be pled under a 2-619 motion, not a 615 motion. I mean, that said, it seems that all your motion to dismiss does is argue the innocent construction rule. So I'm not sure that we're bound by the title of a pleading per se. But it does seem more like a 619 argument to me. Well, Judge, and I had considered bringing 619 because I, you know, is there affirmative matter outside of the face of the complaint that we need to cite? And I came to the conclusion that because the writing itself cited a statute that required notice and labeled itself as the notice under that statute, that it was already part of the pleadings. And as a matter of law, there's an innocent construction here. So I didn't think it was so much a 619 fact that didn't appear on the face of the pleadings, you know, because it raises the whole issue of the privilege by virtue of statute. So I did consider that, Judge. And, you know, the Jimmy John's, I've gone down to Jimmy John's distinction between 2-619 and 15. But I thought that given that the statute itself was cited in the writing, that the court could as a matter of law, assert this has to be an any way to plead defamation in light of defense and construction rule? No, I don't. And we, you know, even without getting to the issue of publication, it's simply when you give a statutory notice that that simply is not a slander, as a matter of law. So I don't think it can be amended. He never asked to amend. But I don't think there's, I think it's fatally flawed, just in its approach, because there is a privilege here. There a distinction between a statutory notice and in innocent construction? Aren't those two concepts? Well, I think that they merge here. They may merge, I don't disagree with that. But they are two different legal concepts, right? Oh, yeah, absolutely. But in the issue of whether this is the gravamen of the writing is slanderous, per se, I think that you have to recognize it's a statutory notice. And therefore, it can't be slanderous per se. And I think that's, that's part of the trouble I'm having is in your motion to dismiss, you really don't talk about the statutory notice. You talk about innocent construction rule. And so that was what was confusing, at least in my mind is the innocent construction rule would be an affirmative matter under 619, whereas a statutory notice would be a 615 dismissal. And we don't really know from the trial court, what his findings were. Is that true? There were no specific findings. But I did address, Judge, I did address in paragraph four, that it was the confluence between notice and innocent construction there, where I said that the plaintiff's allegations letter accused him of criminal activity. In its express context, the letter is legal notification to stay off the SIPC property, pursuant to Illinois law of trespass, the receipt of notice not to enter private property is a condition precedent. I said, Whoa, you know, this is not, you know, we can't take this out of context, this is a statutory notice. And because it's a statutory notice and says that on its face, it has to be given. And maybe innocent construction. I don't know how else to say it, you know, as a matter of law, it cannot be slander. So isn't that an innocent construction that the law says, this is a notice, not slander. I maybe it's a I misused it as a term of art, but I think we get to the same place. Did you have anything else you wanted to add to your argument, Mr. Crosby? No, no. Thank you, Your Honor. If there's no questions, I'll stand on the brief. Justice Vaughn, Justice Wharton. Questions? Okay. Thank you, Mr. Crosby, for your arguments and your candor. Mr. Dunham, rebuttal. Yeah, Your Honor, I just think that the appellee and their brief loaded up their brief with a lot of information about what they think of McAnally and how they were able to get a statutory no order. That doesn't mean that they can go out and libel them. And that's essentially what they seem to be arguing. And the brief was filled with that sort of irrelevant stuff. So let's get to the point of the day. It's one thing to give a notice. All they would have to have done under the notice is say, Mr. McAnally, if you thought in the past that you had the right to come on the SIPC property, please be advised that you don't have that right in the future. They didn't have to send this letter. They've already advised McAnally that they didn't actually get terminated. They didn't want him on the property. And so because they say that they feel like they have to give a notice, that excuses them from loading up their letter with outright accusations that he committed a crime. And that's essentially, that's exactly what they did. The Illinois law simply says that if you accuse somebody of committing a crime, that's liable per se. The fact that you've loaded up all these accusations and a notice doesn't excuse the fact that they accused him of committing a crime. They give him a notice and say, we don't want you coming on the property. And by the way, we don't want you committing, you know, we don't want you anymore committing all this list of crimes that you committed in the past. And they can load up their letter with anything they want to say about him because they think that they have a right to give him notice when they've already given him the notice. But the whole point of the letter was to give him a second warning, right? Just give him a second warning and say, stay off of our property. And then if he doesn't stay off the property, then I suppose that criminal charges can be, could be brought. That's not what they did. They did more than a warning. They went beyond the warning. They committed, they accused him repeatedly, repeatedly. That's Mr. Gulley's words of committing a crime. And that's why the case should be permitted to go forward. Mr. I have a completely different take on Mr. Crosby's allegations in paragraph six of his motion to dismiss. He talks about privilege there and why communications to law enforcement officers are privileged. And nowhere in there does he make any allegation in his motion to dismiss that the publication requirement of a defamation case has not been met. You cannot read that in the paragraph six. It's just not there. So I ask your honor that we send this case back for whatever instructions you want to give the trial court. We believe that we can make such allegations as are necessary to let the case go forward. Okay, gentlemen, thank you both for your arguments. This matter will be taken under advisement and we will issue an order in due course. Have a great day. Thank you. Thank you.